[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The captioned cases have been consolidated and were heard together.
In the first case the plaintiff-husband seeks an annulment, or alternatively a dissolution of the marriage, and the defendant-wife has cross complained also seeking a dissolution.
In the second case the plaintiff-wife seeks a legal separation.
The parties have stipulated that they were married, that the marriage has broken down irretrievably, that a child, Ann Glinski, was born to the wife on January 30, 1988, during the course of the marriage; and, that the husband is the father of the child.
The State of Connecticut has or is providing financial assistance to the child and has an interest in these cases and has entered its appearance.
The plaintiff-husband in his complaint alleges inter alia that the defendant fraudulently entered into the marriage; the plaintiff-wife, in her complaint, as well as in her cross complaint, alleges an irretrievable breakdown of the marriage.
The primary issue presented to the court is the determination of the responsibility for the underlying fault which brought about the breakdown of the marriage.
As to fault, there is a complicating factor which the husband is pressing, namely, that the wife, who was in the United States on a visitor's visa at the time of the marriage, entered into the marriage only for the purpose of gaining permanent residence status.
The facts developed at the trial overwhelmingly point CT Page 606 to the husband as the party at fault in the creation of the marital discord in this marriage.
The marital discord surfaced when the wife informed the husband that she was pregnant. He apparently was not pleased with becoming a father. He could not understand how she could be pregnant since, he testified, that he used condoms and that she informed him she was taking birth control measures. Her testimony was that neither of them used birth preventative measures during intercourse.
The husband had such strong doubts about his responsibility for the wife's pregnancy that he initially denied paternity, in effect implying that she was sexually involved with another man. However, no evidence of such involvement was introduced, nor was there any showing that the father of the child was any man other than the husband.
The marital discord continued during the course of the pregnancy and after the birth of the child. The husband took to spending weekends out of the apartment. The marital discord was aggravated further when the husband's family members sided with the husband against the wife.
The husband's parents, as owners of the premises in which the parties' apartment was located, evicted them from the apartment. The husband and wife left the apartment taking only personal items, leaving the furniture behind. No reason was given by the husband for this abandonment of the furniture and appliances. However, these were items that the husband brought into the marriage. The wife had moved into the husband's apartment before the marriage and they continued to live there after the marriage until the eviction. The husband and wife had no furniture for the new apartment after being evicted and had to furnish it with basic used furniture.
The wife at the time of marriage had entered the United States on a visitor's visa. After the marriage the husband applied to the Immigration Department for permanent residential status for his wife. Subsequently, after the wife's pregnancy and their marital discord he withdrew the application. Then he abandoned his wife, left his employment, withdrew approximately $10,000.00 of liquid assets and toured the eastern United States for a period of six to seven months. He made no financial provisions for child and wife. He deliberately left leaving no information as to where he could be contacted.
After the husband withdrew the petition for the wife's permanent residency she was subject to immediate deportation by the immigration authorities. CT Page 607
The court finds that the cause of the difficulties in the marriage was the fault of the husband. That these difficulties began after the wife became pregnant. That the wife did not enter into the marriage fraudulently, nor did she mislead him in any way when she entered into the marriage. The court notes that both parties were mature individuals at the time of the marriage. The husband being thirty-eight years old, the wife thirty-one years old. The husband had previously been married and divorced, with two minor children. This was the wife's first marriage.
The court further finds that for the best interest of the child the custody of the minor child be with the mother; that the father have reasonable rights of visitation. The court notes that the father denied paternity until there was determined medically through blood testing that he was the father. However, he has admitted paternity and he has exercised visitational rights and has a parental interest in the child.
The court orders that the father provide medical insurance coverage for the child as available through his place of employment. That each parent is to be responsible for one-half of the unreimbursed medical expenses.
Further, the father is to provide support for the minor child in the sum of $49.00 per week, retroactive from June 26, 1989, in accordance with the prior order of the court together with credit for payments made during this time period.
The husband is also to pay to the wife as alimony the sum of $75.00 per week for a period of two years or until she is employed on a full-time basis, or until, she is legally permitted to accept employment in the United States, whichever occurs first.
The court enters these financial orders basing them on the husband's earnings capacity as indicated through his prior employment at the Stanley Works. At Stanley Works he grossed approximately $31,000.00 per year.
The husband's present earnings are very low, that is approximately $276.00 weekly gross. The court does not feel that these earnings adequately represent the husband's earnings potential. At the same time, the court recognizes that the present economic conditions are not likely to permit the husband to reach the earnings level of his prior employment. The court does find, however, that the husband can reasonably gross $400.00 per week with an approximate take home earnings capacity of $325.00 per week. CT Page 608
The court also orders the husband to pay for the reasonable attorney fees incurred by the wife for the services of Attorney Francis and Attorney Mrotek.
The court in entering these orders takes into consideration the requirements set out in the Connecticut General Statutes.
The periodic financial orders entered herein are subject to the enforcement procedures set out in Conn. Gen. Stat. sec. 52-362.
Judgment is to enter for a legal separation in both captioned cases together with the above orders of the court.
JULIUS J. KREMSKI STATE TRIAL REFEREE